[Crim. No. 17713. Second Dist., Div. Four. Jan. 26, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER CLAYTON POWELL, Defendant and Appellant.

## COUNSEL

Ronald L. Goldman for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, J.**—Defendant Roger Powell, together with Daniel Alfred Lord and Larry Michael McMillen, was charged with murder in violation of section 187 of the Penal Code. All three defendants pled not guilty and defendant Powell also pled not guilty by reason of insanity. Powell's motion for a severance was denied. After a jury trial, Powell was found guilty of murder in the first degree and sane; the two codefendants were found not

guilty. Defendant was sentenced to state prison for the term prescribed by law. He has appealed; for the reasons set forth below, we reverse.

Because of the nature of the issues before us, we state the evidence in summary form. It indicates: that defendant had been engaged in a large scale narcotic transaction with the victim and his associates; that defendant had become dissatisfied with the deal and had gone to the victim's apartment with a gun, with the intent either to recoup money theretofore paid or to get a large quantity of narcotics; and that a struggle ensued in which the victim was shot and killed.

There was substantial testimony that defendant was heavily addicted to narcotics; that he was under the influence of narcotics at the time of the killing; and that his condition was such as to render him incapable of forming the malice necessary to make him guilty of murder.

## I

Defendant bases much of his argument in this court on the fact that, in a joint trial, codefendant Lord gave testimony, and was cross-examined, as to certain matters which, defendant contends, tended to implicate him. Since Lord was acquitted, these are not matters that could arise on a retrial, and we need not consider them.

## II

Defendant asserts that comment by the prosecutor on the failure of defendant's wife to testify was both error and prejudicial misconduct. That the comment was improper and error is clear. (*People* v. *Wilkes* (1955) 44 Cal.2d 679 [284 P.2d 481].) Defendant argues that, although an objection to the comment was sustained and the prosecutor was admonished not to repeat the comment, this was not a case where the admonition cured the error. (Cf. *People* v. *Martina* (1956) 140 Cal.App.2d 17, 26 [294 P.2d 1015].) It is clear that the comment of the prosecutor was not an inadvertent slip, but was deliberately made in the face of a prior ruling, in chambers, by the court. However, it was occasioned by testimony about Mrs. Powell which is not likely to be received at a retrial and we need not determine whether the misconduct was so gross as, in and of itself, to require a reversal.

## III

The trial court gave to the jury former CALJIC 73, which reads as follows: "The intent with which an act is done may be manifested by the circumstances attending the act, the manner in which it is done, the means used, and the sound mind and discretion of the person committing the act.

All persons are of sound mind who are neither idiots nor lunatics nor affected with insanity.

"For the purposes of the issues now on trial, you must assume that the defendant was sane at the time of his alleged conduct which, it is charged, constituted the crime described in the information."

Defendant argues that this instruction, given in a case where diminished capacity is in issue, is confusing and that it was error to give it. The People rely on *People* v. *Spaniel* (1968) 262 Cal.App.2d 878, 886-887 [69 Cal. Rptr. 202]. But that case holds no more than that, under the specific circumstances of that trial, no confusion was likely; it does not support the routine giving of the instruction in all diminished capacity cases. We note that, since the trial of this case, the draftsmen have revised old CALJIC 73 and have substituted new CALJIC 3.34 and 3.35. We assume that, on a retrial, the newly phrased instructions will be given.

## IV

 Defendant claims that the trial court's instructions to the jury, which linked the instant case with the case of People v. Sirhan B. Sirhan, was prejudicial error.

The court instructed the jury as follows: "I gather from some of the remarks made, especially by Mr. Goldman, that some of the evidence introduced by the defendants in this case could be strikingly similar to a more famous case that is currently being tried and which will receive a lot of newspaper publicity. I am referring particularly to the Sirhan trial. It is most difficult for me to be in the position that I am, and I think that you should be in the position that you are to be required, but I am going to charge you that it is your requirement to avoid reading any testimony in that case during the process of this trial. I certainly don't expect you to be so blind of the fact that you do not know there is such a trial going on, and I think that it is entirely probable, possible and somewhat advantageous for you to know that certain witnesses are being called, that history is being unfolded in that particular case, but when it comes to the particulars of cross-examination, or when it comes to the particulars of experts or other people who are on trial in that case, I am going to ask you to do your very best to not read or listen to such testimony, put it aside until after this case is over, because howsoever you may try, if you make a study of that case I am fearful that there is a tendency to equate some of the testimony in that case to the testimony in this case, and it does a disservice to the people here on trial who are entitled to be tried only by the evidence introduced into this court."

Defendant asserts that massive publicity was given by the news media to

a purported "deal" being discussed between the prosecution and defense in the Sirhan case and that this publicity implied that the defense of diminished capacity in the instant case was weak. Defendant suggests that the instruction could have led to a wide variety of speculations as to what other connections or similarities there were between the two cases. We agree that the instruction was error, and might have led the jury to believe there were additional similarities in the case. However, the Sirhan case is now long past and it is unlikely that similar references to it will occur on a retrial.

V

The prosecution proceeded on several theories. In addition to relying on that of an intentional killing in either the first or second degree, it relied on several theories of felony murder: (1) that the killing was committed in the perpetration of an assault with a deadly weapon; (2) that it was committed in the perpetration of kidnaping; (3) that it was committed in the perpetration of burglary, said burglary consisting of the entry into the victim's apartment with one or more of the following felonious intents: (*a*) to possess a narcotic, in violation of the Health and Safety Code sections making such possession a felony; (*b*) to commit an assault with a deadly weapon; or (*c*) to commit kidnaping.

The trial court instructed on all of these various theories. No complaint is here made as to the instructions on intentional murder, nor as to the instructions involving kidnaping or on burglary resting on an entry with intent to violate the narcotic laws.[1] The trial court gave the following instruction with reference to the defense of diminished capacity (the italicized language being added by the court on its own motion to an instruction otherwise requested by defendant):[2] "If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, intoxication or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder. Thus, if you find that the defendant's mental capacity was so diminished that he did not, or you have a reasonable doubt whether he did, premeditate, deliberate, or form an intent to kill, you cannot convict him of a wilful, deliberate and premeditated murder of the first degree. Also, if you find that his mental capacity was so diminished

---

[1]Under these circumstances, and because the evidence on any retrial may well be different, we do not discuss the unquestioned instructions. Our silence is not necessarily an indication that they may be given on a retrial without further tailoring to the evidence then produced.

[2]The instruction requested by Powell was the instruction now contained in CALJIC (3d) 8.77, omitting the final paragraph of that draft instruction.

that he did not, or you have a reasonable doubt whether he did, harbor malice aforethought, as it has been defined for you, you cannot find him guilty of murder of either the first or second degree, *unless of course he had sufficient capacity to form the specific intents and you find beyond a reasonable doubt he did form the intents described in the felony murder rule.*"

We hold that the instructions as given were erroneous in the respects hereinafter pointed out, and we indicate that the instruction on diminished capacity above quoted is at least questionable.

## A

It is clear that, under the rule announced in *People* v. *Ireland* (1969) 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580], it was error to instruct on second degree felony murder as based on a killing in the commission of assault with a deadly weapon. In *Ireland,* the court said (at p. 539): ". . . the utilization of the felony-murder rule in circumstances such as those before us extends the operation of that rule 'beyond any rational function that it is designed to serve.' [Citation.] To allow such use of the felony-murder rule would effectively preclude the jury from considering the issue of malice aforethought in all cases wherein homicide has been committed as a result of a felonious assault—a category which includes a great majority of all homicides. This kind of bootstrapping finds support neither in logic nor in law."[3]

## B

Under *People* v. *Wilson* (1969) 1 Cal.3d 431 [82 Cal.Rptr. 494, 462 P.2d 22] (decided after the trial in this case), the court also erred in giving a felony-murder instruction based on an underlying felony of burglary where the burglary is based on an entry with intent to commit felonious assault.

## C

■ Whether or not the revised instruction on diminished capacity was also error is a matter of some doubt. In *People* v. *Ford* (1966) 65 Cal.2d 41 [52 Cal.Rptr. 228, 416 P.2d 132], the court said (at p. 58): "Thus, [*People* v.] *Conley* does not alter the rule, . . . that a homicide found to have been perpetrated during the commission of certain felonies cannot be less than murder of the second degree," adding, in footnote 9 on that same page: "Of course, pursuant to the *Conley* rule, manslaughter instructions must be given notwithstanding the involvement of the felony-murder

---

[3]To the same effect: *People* v. *Jenkins* (1969) 275 Cal.App.2d 545 [80 Cal.Rptr. 257].

rule in those cases where there is any factual dispute as to whether the homicide was committed during the perpetration of a relevant felony or where the issue of diminished capacity or intoxication is raised as a defense to the felony charge as well as to the murder charge."

It would seem to follow that the diminished capacity instruction above quoted with the trial court's modification, correctly stated the law as thus set forth in *Ford.*

However, in *People* v. *Ireland* (1969) *supra,* 70 Cal.2d 522, 539, fn. 13, the court said: "In the circumstances of the instant case this interpretation would have substantially eviscerated the defense, which was based upon principles of diminished capacity. Although specific intent to commit the underlying felony is necessary to the operation of the felony-murder doctrine [citation]—so that it is arguable that a defense of diminished capacity would not be entirely unavailable since it could be directed to the issue of intent to commit the underlying felony—nevertheless it is clear that the applicability of such evidence to that narrow issue would be in no way equivalent or comparable to the applicability of such evidence to the broad issue of malice aforethought in the charged offense." The language above quoted from *People* v. *Ford* was not referred to, and that case was not overruled.

Under the circumstances, we conclude that the language in *Ireland* was intended to refer only to cases where the felony-murder rule was inapplicable under the "bootstrapping" theory and that it was not intended to change the longstanding doctrine that diminished capacity is not a defense to a felony-murder charge based on an applicable underlying felony, except insofar as the diminished capacity affects the mental element involved in that underlying felony itself. In other words, we hold that the diminished capacity instruction, as given in the case at bench, is proper so long as the felony-murder instruction is limited to appropriate felonies.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.